IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHNNY M. BUSH, JR., on behalf of himself and the class he seeks to represent,  )<br>)<br>)<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>HONDA DEVELOPMENT & MANUFACTURING OF AMERICA, LLC,  )<br>)<br>)<br>)<br>Defendants.  )  | CASE NO. 2:24-cv-04114<br><br>JUDGE DOUGLAS R. COLE<br><br>MAGISTRATE JUDGE<br>ELIZABETH PRESTON DEAVERS |

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON VENUE**

Venue is not proper in the Northern District of Alabama because none of the three statutory requirements for such venue are satisfied — the alleged discriminatory decisions were not made in that District, the underlying records relevant to such decisions are not "maintained and administered" there, and the Plaintiff would not have worked there "but for the alleged unlawful employment practice." 42 U.S.C §2000e-5(f)(3); Bush Suppl. Decl. at ¶¶3-15, 18-24 (*attached*); Bush Decl. at ¶¶5-10, 13-14, 20 (ECF no. 25-2, PAGEID ## 207-209).

"The district court must accept the plaintiff's well-pleaded factual allegations regarding venue as true, draw all reasonable inferences from those allegations in the plaintiff's favor, and resolve any factual disputes in the plaintiff's favor. If a defendant prevails on a Rule 12(b)(3) challenge, the district court has discretion to dismiss the case or transfer it in the interest of justice to an appropriate court." *Whipstock v. Raytheon Co.,* 2007 U.S. Dist. LEXIS 58500, **3-4, 2007 WL 2318745, at *2 (E.D. Mich.); *Meng Huang v. Ohio State Univ. & Giorgio Rizzoni*, 2019 WL

2120968, 2019 U.S. Dist. LEXIS 83907, **5-6 (E.D. Mich. May 14, 2019) (same, citing *Whipstock*).

## I. Promotion Authority and Decisions

Title VII's special venue statute provides for venue in the judicial district "in which the unlawful employment practice is alleged to have been **committed**. . . ." 42 U.S.C. §2000e-5(f)(3) (emphasis supplied); *Whipstock,* 2007 U.S. Dist. LEXIS 58500, **7-12 ("[V]enue . . . is proper **only** where Plaintiff alleges Defendant **made the decision** not to hire him.") (emphasis added). The statute does not provide for venue "where the alleged unlawful employment practice is **implemented** or its **effects** are felt." *Jones v. Hagel*, 956 F. Supp. 2d 284, 289 (D.D.C. 2013) (Brown Jackson, J.); *accord* Order at 5-6 (ECF no. 29, PAGEID ## 260-261) (noting Sixth Circuit precedents that "have interpreted . . . Title VII's special venue provision as providing for venue **only** where 'the unlawful employment practice is alleged to have been committed, regardless of where its effects are felt.'") (emphasis added; quoting *Meng Huang*, 2019 WL 2120968, at *3, 2019 U.S. Dist. LEXIS 83907, *8 and *Anthony v. United Airlines, Inc.*, No. 2:23-CV-12860, 2024 WL 1334308, at *2, 2024 U.S. Dist. LEXIS 56456; (E.D. Mich. Mar. 27, 2024)); *Jones v. Hagel*, 956 F. Supp. 2d at. 289 ("[T]he Court must look to the place where the **decisions and actions** concerning the employment practices **occurred**.") (emphasis added; quoting *Hayes v. RCA Service Co.*, 546 F. Supp. 661, 663 (D.D.C. 1982)).

Here, all the personnel decisions at issue were made solely at HDMA's corporate headquarters in this judicial district, not in the Northern District of Alabama. Bush Suppl. Decl. at ¶¶3-10; Bush Decl. at ¶¶6-10 (ECF no. 25-2, PAGEID ## 207-208); *see also id.* at ¶¶3-5, 13-14. Plaintiff attests that the promotion decisions at issue were made by the Department Leadership Team at corporate headquarters in Marysville, Ohio to whom he would have reported if promoted

to the Career Level 6 position he sought on that Team. Bush Suppl. Decl. at ¶¶3-10. That was the routine chain of command and decision making. *Id*.; *see also,* Bush Decl. at ¶¶3-5, 13-14 (ECF no. 25-2, PAGEID ## 209-210). "No such decisions were made by anyone in the Northern District of Alabama or at the Lincoln, Alabama plant." Bush Suppl. Decl. at ¶4. *See e.g., Texas Dep't. Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-254 (1981) (holding that the decisionmaker is the one who must testify to his or her promotion decisions and any non-discriminatory reason for such decisions, that "the defendant cannot meet its burden merely through . . . argument of counsel," and "if the employer is silent in the face of the [*prima* facie] presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case."); *Turnes v. Amsouth Bank, NA,* 36 F.3d 1057, 1061 (11th Cir. 1994) ("[A]n employer may not satisfy its burden . . . by offering a justification which [it] either did not know or did not consider at the time the decision was made.").

Because the pool of persons being considered for such promotions are not limited to candidates from the Lincoln, Alabama plant, neither the selection decision itself nor the underlying personnel records considered in making such decision can be based on that one plant's narrow set of subsidiary copies of such records rather than the master records at corporate headquarters from which they came for the array of candidates as a whole. Bush Suppl. Decl. at ¶¶8-10, 14-17.

"'[V]enue cannot lie in [a District] when a substantial part, if not all, of the employment practices challenged in the action took place outside the District even when actions taken in the District may have had an impact on the plaintiff's situation.'" *Calobrisi v. Booz Allen Hamilton, Inc.*, 58 F.Supp.3d 109, 112 (D.D.C. 2014); *see also Meng Huang*, 2019 WL 2120968, at *3, 2019

U.S. Dist. LEXIS 83907, *8 (same, E.D. Mich.); *Anthony,* 2024 WL 1334308, at *2 (same, E.D. Mich); *Whipstock,* 2007 U.S. Dist. LEXIS 58500, **7-12 (same E.D. MI).[1]

HDMA's Reply Brief (ECF no. 28) responding to Plaintiff's first Declaration does not dispute that such promotion decisions are made at its Ohio headquarters. Bush Suppl. Decl. at ¶5. *Compare* Bush Declaration, ¶¶6-9 (ECF no. 25-2, PAGEID ## 207-208) *with* HDMA's Reply Br. at 2-3, 8-9, PAGEID ## 250-252. HDMA only argued that it "*implemented* four of the five challenged promotions in Lincoln, Alabama" (*id.*), **not** that the promotion decision itself was made there. *Id.* at 9, PAGEID # 251 (HDMA's emphasis; citing no evidence); *cf.* Bush Suppl. Decl. at ¶¶6-7. "Implementation" of the promotion decision obviously occurred only *after* the decision was made and was merely the routine *effect* of the promotion decision, not a new or different decision in its own right. *Id.* Implementing the decision only involves rote administrative tasks such as changing the selected person's pay and payroll records, updating their personnel records, orienting them to the new position and job description, and introducing them to the employees they would supervise and to the various plants and individuals with whom they may have to communicate, liaise or collaborate, etc. Bush Suppl. Decl. at ¶7.

"None of such contested promotion decisions involved assignment or work at a single plant like the satellite Honda plant in Lincoln, Alabama." Bush Suppl. Decl. at ¶8. "Nor did the candidates eligible or considered for promotion to the positions that [Plaintiff] was denied come only from the Lincoln, Alabama plant." *Id.* at ¶9. Instead, "all such eligible candidates came from either from one of HDMA's *nine* satellite plants and facilities, or from corporate headquarters itself

---

[1] *Taylor v. Shinseki*, 13 F. Supp. 3d 81, 2014 U.S. Dist. LEXIS 12636, 2014 WL 350261, at *2 (D.D.C. Jan. 31, 2014) (same); *Jones v. Hagel,* 956 F. Supp. 2d at 289 (same); *James v. Booz-Allen & Hamilton*, 227 F. Supp. 2d 16, 20 (D.D.C. 2002) (same) *Darby v. United States DOE*, 231 F. Supp. 2d 274, 277 (D.D.C. 2002) (same); *Stebbins v. State Farm Mut. Auto. Ins. Co*., 413 F.2d 1100, 1102 (D.C.Cir. 1969).

(10 total locations). *Id.* at ¶10.  As a result, the Alabama plant had only one-tenth of the eligible promotion candidates on average. *Id.*

Upon merger in 2021, all promotion opportunities above Plaintiff's existing Career Level 5 position became part of the centralized staff reporting directly to the Unit Lead (Career Level 6) and the Department Lead (Career Level 7), both of whom are upper-level managers at corporate headquarters who select their own subordinate employees that will report to them from the companywide pool of applicants and candidates eligible to be considered for such promotions. Bush Decl. at ¶6 (ECF no. 25-2, PAGEID ## 207-208)

As Plaintiff attests, "[t]he Department Lead in Ohio was the decisionmaker for the promotions to the Career Level 6 positions that I listed in my Complaint and that HDMA lists in its motion to transfer." Bush Decl. at ¶6 (ECF no. 25-2, PAGEID ## 207-208) (listing the decisions to promote Colmer, Pace, Eisner, McKinley and Grieve to Career Level 6 promotions in the companywide Supply Chain operations division). He also attests that "[t]he management of the Lincoln, Alabama plant **played no role** in such promotion decisions," *id.* at ¶7 (emphasis added), that "[t]hose positions . . . had no duties or responsibilities that were limited to the Lincoln, Alabama plant," *id.* at ¶7, and that such "Career Level 6 promotions were normally **decided** by the 'Department Lead' to whom the selected persons would report . . . in Ohio, not Alabama." *Id.* at ¶8 (emphasis added; citing and attaching the PSCC Organization Chart as Exhibit 1). "In my experience, such decision makers and policymakers are all located in Ohio, not Alabama." *Id.* at ¶10.

Additionally, the policies and practices challenged as having an unlawful disparate impact "are decided by the Leadership Team at company headquarters in this judicial district, not by anyone at the Lincoln, Alabama plant or in the Northern District of Alabama." Bush Suppl. Decl.

5

at ¶11; *see* Complaint ¶¶20-24, 35-37 (ECF no. 1, PageID 6, 9-10) (defining the centralized polices and practices challenged on disparate impact grounds); *see also* Pl. Br. at 8 (ECF no. 23, PageID 136 (same). The Lincoln, Alabama plant ceased having any policies, practices or procedures of its own once it was merged into HDMA on April 1, 2021. Bush Suppl. Decl. at ¶ 13; *see also,* Bush Decl., ECF no. 25-2 at ¶¶15 & 17, PageID 210. Plaintiff challenged such centralized policies and practices **both** on his own behalf individually and on behalf of the putative class alleged to have been similarly injured in the Complaint. ECF no. 1, ¶¶12-14, 20-24, 35-37 (PageID 6, 9-10); Pl. Br., ECF no. 23 at 8, PageID 136. HDMA is mistaken in suggesting that such centralized evidence of disparate impact is not relevant to venue because it only applies to the Plaintiff's class claims. *See e.g., Walker v Jefferson County Home,* 726 F.2d 1554, 1557-1558 (11th Cir. 1984) (holding disparate impact applies to individual, non-class claims); *Craig v. Alabama State Univ.*, 804 F.2d 682, 687 & fn. 7 (11th Cir. 1986) (same).

## II. Records Control, Maintenance and Administration

The second element of Title VII's special venue statute is limited to venue in the judicial district "in which the employment records relevant to such practice are maintained and administered." 42 U.S.C. §2000e-5(f)(3) (emphasis added); *Anthony,* 2024 U.S. Dist. LEXIS 56456, **5-7. "The second prong of the Title VII venue statute requires that the employer 'maintained and administered' employment records in '***the*** judicial district' where venue is sought." *James v. Booz-Allen & Hamilton, Inc.*, 227 F. Supp. 2d 16, 23 (D.D.C. 2002) (Court's emphasis, quoting 42 U.S.C. §2000e-5 (f)(3)). "The statute's use of the singular (i.e., 'the judicial district') makes clear that Congress intended venue to lie on the basis of the presence of records **only in one** judicial district in which **the complete 'master' set** of employment records is 'maintained and administered.'" *Washington v. Gen. Elec. Corp.*, 686 F. Supp. 361, 362-63

6

(D.D.C. 1988) (emphasis added); *Jackson v. Mayorkas*, 2023 U.S. Dist. LEXIS 145036, **5-11 (D.C. MD 2023) ("Because . . . the master set of relevant employment records is on servers outside of Maryland, the Court finds that Jackson cannot establish venue in Maryland based on the employment record prong of the Title VII venue provision.").[2] "Congress explicitly limited venue under the second prong to the one judicial district in which **the complete set** of relevant employment records is located." *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 13 (D.D.C. 2009) (emphasis added, citing §2000e-5(f)(3)); *Khalil v. L-3 Commc'ns Titan Grp.*, 656 F. Supp. 2d 134, 136 (D.D.C. 2009) (venue is proper "where the complete master set of Plaintiff's relevant employment records are maintained and administered, not merely where any records happen to be located").[3]

Here, there is no evidence that the Northern District of Alabama is "**the** judicial district in which **the** employment records relevant to such practice are maintained and administered." 42 U.S.C. §2000e-5(f)(3) (emphasis added). Such records are maintained and administered at

---

[2] *See also, Enoh v. Hewlett Packard Enter. Co.*, No. 17-04212, 2018 WL 3377547, at *9 (N.D. Cal. July 11, 2018) (holding venue was not proper in the Northern District of California when the relevant records were maintained on servers outside the state); *Had v. Cognizant Tech. Sol. Corp.*, No. 20-CV-03497-BRM-ESK, 2020 U.S. Dist. LEXIS 202689, 2020 WL 6383245, at *2 (D.N.J. Oct. 30, 2020) (holding that venue in the District of New Jersey was not proper because the relevant records were maintained and administered on servers outside New Jersey); *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 259 (D.D.C. 2013) (rejecting argument that cloud-based records without a physical address allowed venue wherever was established the records were accessible electronically); *Jaiyeola v. Rivian*, No. 22-CV-03982-BLF, 2023 U.S. Dist. LEXIS 28865, 2023 WL 2173188, at *5 (N.D. Cal. Feb. 21, 2023)(finding venue was not proper in the Northern District of California when the records were stored in a cloud-based folder and there was no evidence the server in that District).

[3] *See also, Abraham v. Burwell*, 110 F. Supp. 3d 25, 30 (D.D.C. 2015); *Taylor v. Shinseki*, 13 F. Supp. 3d 81, 87-89 (D.D.C. 2014) ("Courts in this district have interpreted this provision to mean that venue is proper in only one district: where the 'master set' of employment records is located."); *Amirmokri v. Abraham*, 217 F. Supp. 2d 88. 90-91 (D.D.C. 2002) (holding venue was not proper in the District of Columbia even though *some* records were maintained there, because "*the* employment records relevant to such practice" were maintained and administered in Maryland).

corporate headquarters, not in a single satellite plant like that in Lincoln, Alabama. Bush Suppl. Decl. at ¶¶14-17.

"[T]he employment records relevant to such practice," §2000e-5(f)(3), for purposes of Plaintiff's individual disparate impact claim in Count I are necessarily those of all persons impacted by such practices, not just the four white employees that may also have records at the Lincoln, Alabama plant. "Claims of disparate impact under Title VII must, of necessity, rely heavily on statistical proof," that "focuses on statistical disparities, rather than specific incidents." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988); *Griggs v. Duke Power*, 401 U.S. 424 (1971). Such statistical data is just as necessary for an individual plaintiff's disparate impact claim as it is for a class challenge to the same policy or practice. *See e.g., Walker,* 726 F.2d at 1557-1558; *Craig,* 804 F.2d at 687 & fn. 7. Only HDMA's master personnel and payroll records at corporate headquarters "cover the range of locations from which the candidates considered for promotion typically come." Bush Suppl. Decl. at ¶14. Plaintiff attests that "[t]he persons eligible to compete or be considered for promotion to such Department Leadership Team positions come from HDMA as a whole, not just employees at a particular plant or facility such as the Lincoln, Alabama plant where many of the eligible candidates never worked or had any records." *Id.* at ¶ 17; *see also* Bush Decl. at ¶9 (ECF no. 25-2, PAGEID # 208). "HDMA employees are eligible to be considered for promotion opportunities throughout the company regardless of location." Bush Suppl. Decl. at ¶16; Complaint, ¶17 (ECF no. 1, PAGEID # 5).

"The only records that cover such multiple candidates coming from multiple different plants and facilities are the master personnel and payroll records maintained and administered at corporate headquarters where the decisionmakers are located and the selection process [actually] occurs." Bush Suppl. Decl. at ¶17; *id.* at ¶11. "Any local versions of those records that may exist

8

at the Lincoln, Alabama plant would not include the records of candidates eligible to be considered from HDMA's other eight satellite plants and facilities, four of which are also located in central Ohio where the master personnel and payroll records are maintained and administered at corporate headquarters." *Id.* at ¶15.

The same is true for the records relevant to Plaintiff's individual disparate treatment claim in Count II. *See e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973) (holding that disparate treatment evidence may include defendant's "general policy and practice with respect to minority employment", including "statistics as to [defendant's] employment policy and practice [which] may be helpful to a determination of whether [its decision] conformed to a general pattern of discrimination against blacks."); *see also* Bush Suppl. Decl. at ¶¶3-10.

For example, Phil Eisner (WM) never worked or had any records at the Lincoln, Alabama plant when the Department Leadership Team at corporate headquarters made the decision to promote him rather than [the Plaintiff] to the Planning Unit Leader, Career Level 6 position in Marysville, Ohio." Bush Suppl. Decl. at ¶15; *see also* Bush Decl., ¶¶3 & 6 (ECF no. 25-2, PAGEID ## 207-208); Complaint, ¶¶19-27 (ECF no. 1, PAGEID ## 5-7). "Any personnel records used in making that selection decision was necessarily based on the master personnel and payroll records maintained and administered at corporate headquarters in Marysville, not the Lincoln, Alabama plant where Eisner and other eligible candidates never worked or had any records." Bush Suppl. Decl. at ¶15. In Plaintiff's experience, "there are no such master personnel or payroll records maintained or administered at the Lincoln, Alabama plant, and no such records of any kind that are maintained solely at that plant." *Id.* at ¶ 16.

9

### III. Plaintiff's Position And Duties But For The Challenged Discrimination

The third element of Title VII's special venue statute is limited to venue "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C §2000e-5(f)(3) (emphasis added). That is not the case here. Bush Suppl. Decl. at ¶18-24. Plaintiff attests that "[n]one of the promotions [he] was denied involved work performed solely or mainly for the Lincoln, Alabama plant or in the Northern District of Alabama" (*id.* at ¶18); that "[t]he promotion of Phil Eisner to a Career Level 6 position as Planning Unit Leader in the Supply Chain Parts Planning Department was not stationed at the Lincoln, Alabama plant and involved no work at or for that plant," (*id.* at ¶19); that "[t]he other four such promotion decisions identified in [his] Complaint involved Career Level 6 work as part of the centralized Supply Chain Delivery Department as Unit Lead (Grieve and Colmer), as Crisis Management Unit Lead (McKinley) or as Transportation Unit Lead in the Supply Chain Parts Procurement Department (Pace)" (*id.* at ¶20; *see also* ECF no. 25-2 at ¶¶5-8, PAGEID ## 207-208); that "[a]ll five of such employees promoted to Career Level 6 positions reported to and worked for such corporate-level Departments and were selected and supervised by the Career Level 7 Department Lead for such Departments located at corporate headquarters, not anyone at the Lincoln, Alabama plant." *Id.* at ¶21.

Although such Career Level 5 and 6 employees were *allowed* to continue using HDMA's the Lincoln, Alabama facilities after the merger if they chose to do so, that was not part of their actual job or work assignment or otherwise required. Bush Suppl. Decl. at ¶ 22. For example, even in performing his Career Level 5 position as Group Lead, the Plaintiff worked for, and was solely supervised by, his Unit Leader, David Reames, and his Department Lead of the Supply Chain Packaging Department, Shawnee Moseman, both of whom were based in the PSCC facility in

Marysville, Ohio, not Alabama. Bush Suppl. Decl. at ¶23. Nor did he or his subordinate employees work for anyone at the Lincoln, Alabama plant. *Id.* They all had duties and responsibilities that extended beyond that one plant and facility. *Id.*

HDMA's declaration from Robb Harris does not establish otherwise. He was not the decisionmaker for any such matters and had no personal knowledge about them. Bush Suppl. Decl. at ¶24. Harris worked in Ohio (ECF 25-2 at ¶10 PAGEID # 208), and says he "had access to the personnel records for associates working at the Lincoln, Alabama facility [and] working at other facilities" (ECF no.17-2 at ¶3 PAGEID # 117). But he never identifies any personal knowledge or non-hearsay source regarding the work or location assignments of the four persons promoted to Career Level 6 positions that he says worked at the Lincoln, Alabama plant. *Id.*; Bush Suppl. Decl. at ¶ 24; *see also,* ECF Bush Decl., ECF no. 25-2 at ¶10, PAGEID # 208).

Moreover, "the third section of Title VII's special venue provision was designed to address instances of discrimination in which the complainant is in a different district than the defending employer, such as an applicant for a job." *Meng Huang,* 2019 U.S. Dist. LEXIS 83907, **7-12.) (quoting *Cole*, 901 F.Supp.2d at 52); *Jackson v. Mayorkas*, 2023 U.S. Dist. LEXIS 145036, **5-11 (D.C. MD 2023) ("[T]he Court finds this [third] prong to be inapplicable to this case" because it "is most relevant in cases in which a person was not hired for a position.") (citing *Harley v. Chao*, 503 F. Supp. 2d 763. 765-66, 774 (M.D.N.C. 2007)).

That is not the situation case here because the discriminatory decisions were made in Ohio, the underlying master records were "maintained and administered" there and, "but for the alleged unlawful employment practice," Plaintiff's principal duties and responsibilities (*i.e.* his "work") would have been in the corporate-level purchase and supply Department and he "would have" reported to the centralized Department Lead for such job rather than any single satellite plant like

11

the one in Alabama. Bush Suppl. Decl. at ¶¶18-24. That would have necessarily included the full range of work for the promotions at issue in Counts I and II, not just the subparts of such positions that were related to the Lincoln, Alabama plant.   Bush Suppl. Decl. at ¶¶18-24

## CONCLUSION

Based on all the foregoing facts and evidence, venue in Alabama is not permissible under §2000e-5(f)(3), and therefore prohibited as a convenience under §1404(a).

Respectfully submitted,

*s/Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
Anna R. Caplan (OH Bar No. 0104562)
BARKAN MEIZLISH DEROSE COX, LLP
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300
Trial Attorney for Johnny M. Bush, Jr.

Robert L. Wiggins, Jr., (*Pro Hac Vice*)
Gregory O. Wiggins, (*Pro Hac Vice*)
WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500
205/254-1500 (fax)
Counsel for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I do hereby certify that on May 20, 2025, the foregoing Plaintiff's Supplemental Brief On Venue  has been served on all Defendants via the Court 'e-filing system

*s/Robert E. DeRose*
Of Counsel