# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JOHNNY M. BUSH, JR.,**

    **Plaintiff,**

    v.

                                  Civil Action 2:24-cv-4114
                                  Judge Douglas R. Cole
                                  Magistrate Judge Elizabeth P. Deavers

**HONDA DEVELOPMENT &**
**MANUFACTURING OF AMERICA,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Honda Development & Manufacturing of America, LLC's ("HDMA") Motion to Transfer Venue (ECF No. 17.) Plaintiff Johnny M. Bush, Jr.'s opposition (ECF No. 25) and HDMA's reply (ECF No. 28). Through its motion, HDMA seeks to transfer this putative class action raising claims under Title VII and 42 U.S.C. § 1981 to the United States District Court for the Northern District of Alabama, Eastern Division pursuant to 28 U.S.C. 1404(a). By Order dated May 6, 2025, the Court, noting the parties' failure to meaningfully address the threshold question of whether venue was proper in that district under the special venue provision of Title VII, ordered simultaneous supplemental briefing. (ECF No. 29.) Both parties filed their supplemental briefs as ordered on May 20, 2025. (ECF Nos. 30, 31.) For the following reasons, HDMA's Motion to Transfer Venue (ECF No. 17) is **GRANTED.**

# I.

With one exception as noted,[1] the following background allegations, relevant to the current Motion, are taken from Plaintiff's Complaint. Plaintiff is an African American, current employee of HDMA. (Complaint, ECF No. 1 at ¶ 1.) HDMA is a corporation doing business in the State of Alabama. (*Id.* at ¶ 5.) Prior to April 1, 2021, the Honda facility in Lincoln, Alabama was a separate independent entity incorporated as Honda Manufacturing of Alabama, LLC ("HMA"), and operated with its own organizational structure, policies, procedures, and employees. (*Id.* at ¶ 8.) HMA initially hired the Plaintiff as an Associate Administrator in the Production Materials Control Department on April 29, 2002. (*Id.* at ¶ 28.) On April 1, 2021, Honda merged all of its automobile manufacturing facilities in the United States related to frame, engine, transmission, and related engineering and purchasing operations into a single multi-state entity formed and known as HDMA. (*Id.* at ¶ 9.) Nine separate manufacturing facilities were merged into HDMA as a single operation and corporate entity, including the Lincoln, Alabama plant where Plaintiff, an Alabama resident, has worked and currently performs his job duties. (*Id.* at ¶ 11; *see also* EEOC Charge Dated September 15, 2023, ECF No. 17-1, setting forth Plaintiff's home address and address of his employer.)

Plaintiff is part of HDMA's centralized organizational structure with responsibility for supervising and managing various subordinate employees and supply chain operations for HDMA's plants in Marysville and East Liberty, Ohio, Greensburg, Indiana, Lincoln, Alabama

---

[1] In ruling on a motion to transfer venue under 28 U.S.C. § 1404(a), a court may consider affidavits and other documents offered by the parties, in addition to the allegations in the complaint, in addressing a motion to transfer. *Bogard v. TikTok Inc.*, 725 F. Supp. 3d 897, 904 (S.D. Ind. 2024) (citing *Simonian v. Monster Cable Prods., Inc.*, 821 F. Supp. 2d 996, 998 (N.D. Ill. 2010)).

and the company's Performance Manufacturing Center ("PMC"). (ECF No. 1 at ¶ 14.) Plaintiff currently holds the position of Regional Packing Supplier Account Manager as Group Lead at Career Level 5 in HDMA's Fleet Maintenance Unit, which is part of the Supply Chain Packaging Department. (*Id.* at ¶ 29.) Within that position, his current title is Staff Administrator ("SA"). (*Id.* at ¶ 15.) Unlike Plaintiff, all Caucasian and non-African American Group Leads in the Packaging Fleet Maintenance Unit hold that same position as a Staff Engineer ("SE"). (*Id.*) The Staff Engineers are paid at a higher rate than Plaintiff as a Staff Administrator. (*Id.*)

Both before and since the merger forming HDMA, Plaintiff has made known his interest in promotion opportunities. (ECF No. 1 at ¶ 18.) He has been interested in and sought to be considered for assignment, promotion, transfer and training opportunities in positions as Unit Lead, Department Lead, Division Lead and/or other job opportunities at Career Levels 5 to 8. (*Id.* at ¶ 19.) By way of example, Plaintiff sought to be considered for and promoted or transferred to Career Level 6 positions, including those given to the following Caucasian and non-African American peers:

- Richard Colmer's promotion to the Unit Lead for the Delivery Department after HMAD's formation and merger;
- Daniel Pace's promotion to Transportation Unit Lead as part of the Delivery Department on November 8, 2023;
- Phil Eisner's promotion or transfer to Unit Lead as part of the Planning Department after HMAD's formation and merger;
- Mark McKinley's promotion to the Crisis Management Unit Lead position on November 8, 2023;
- Eric Grieve's promotion to the Unit Lead position on July 17, 2024.

(*Id.* at ¶ 25.)

Based on these and additional factual allegations, Plaintiff brings claims for disparate impact and disparate treatment, both on behalf of himself and a putative class which he defines as "exempt African American employees, associates and contractors who hold, perform or seek

3

supervisory, managerial, administrative or other exempt positions, or who have held, performed or sought such exempt positions or duties during the applicable limitations period. (ECF No. 1 at ¶ 53.) With respect to his disparate impact claim, Plaintiff alleges, *inter alia*, that HDMA's promotion selection process prevents African Americans from learning about or competing for job opportunities before they are filled by Caucasians or other non-African Americans. (ECF No. 1 at ¶¶ 58-62.) As for his disparate treatment claim, as it relates to Plaintiff individually, he asserts that he made known his interest in being considered for and promoted to positions filled by Caucasians or other non-African Americans, that he was qualified for those positions, and that he was not selected or promoted to such positions even though HDMA continued to seek candidates with his same or similar general qualifications. (*Id*. at ¶¶ 63-73.)

## II.

The governing legal standards were more fully set out by the Court in its previous Order and that discussion is incorporated by reference here. To confirm, however, HDMA seeks the transfer of this case pursuant to 28 U.S.C. § 1404(a) which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). . .)). "A case 'might have been brought' in a transferee court if (1) that court has subject matter jurisdiction over the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." *Total Quality Logistics, LLC v. Medellin*, 662 F. Supp. 3d 788, 791 (S.D. Ohio 2023) (*Kay v. National City Mortg. Co.,* 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007)).

As noted, the Court ordered supplemental briefing for the parties to more fully address whether venue was proper in the Northern District of Alabama under Section 2000e-5(f)(3),

4

which allows a plaintiff to bring a Title VII action in any one of four possible judicial districts: (1) any judicial district in the state in which the unlawful employment practice is alleged to have been committed; (2) in the judicial district in which the employment records relevant to such practice are maintained and administered; (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice; or, (4) if the respondent is not found within any district under the first three scenarios, within the judicial district in which the respondent has his principal office. 42 U.S.C. § 2000e-5(f)(3).

Title VII's "'statutory scheme indicates that Congress intended to limit venue in [such] cases to those jurisdictions concerned with the alleged discrimination.'" *Nash v. McHugh*, No. 5:14-CV-209, 2015 WL 420222, at *2 (W.D. Ky. Jan. 30, 2015) (quoting *Darby v. U.S. Dep't of Energy,* 231 F.Supp.2d 274, 277 (D.D.C.2002)). Importantly, "[o]nly one of Title VII's venue provisions must be satisfied for venue to be proper." *Id.* (citing *Turnley v. Banc of America Inv. Servs. Inc.,* 576 F.Supp.2d 204, 212 (D.Mass.2008)).

Finally, as relevant here, "[t]he law is clear that in determining whether venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives." *Ring v. Roto-Rooter Servs. Co.,* No. 1:10-CV-179, 2010 WL 3825390, at *4 (S.D. Ohio Sept. 28, 2010) (internal quotation and citations omitted).

## III.

In its supplemental briefing, HDMA contends that venue is proper in the Northern District of Alabama under all of the first three prongs of Title VII's venue statute. HDMA relies primarily, however, on the third prong to support its Motion seeking transfer. According to HDMA, if Plaintiff had received four of the five promotions he claims he was denied because of HDMA's discriminatory practices, he would have continued to work in Alabama. In support of

this position, HDMA has submitted a second Declaration from Robb Harris, its Human Resource Partner/Local HR Department Manager since April 1, 2021. (ECF No. 30-1, Declaration of Robb Harris, "Harris Decl. II".) Mr. Harris details the relevant promotions highlighted by Plaintiff as follows:

- Richard Colmer was promoted to a Career Level 6 position in the Supply Chain Delivery Department effective September 15, 2022. Immediately prior to Mr. Colmer's promotion, he worked in HDMA's Lincoln, Alabama facility. After Mr. Colmer's promotion and in all positions he has held since September 15, 2022, HDMA assigned Mr. Colmer to its Lincoln, Alabama facility. Mr. Colmer currently works at HDMA's Lincoln, Alabama facility.

(*Id.* at ¶ 4.)

- Daniel Pace was promoted to a Career Level 6 position in the Supply Chain Parts Procurement Department effective May 15, 2023. Immediately prior to Mr. Pace's promotion, he worked in HDMA's Lincoln, Alabama facility. After Mr. Pace's promotion and in all positions he has held since May 15, 2023, HDMA assigned Mr. Pace to its Lincoln, Alabama facility. Mr. Pace currently works at HDMA's Lincoln, Alabama facility.

(*Id.* at ¶ 5.)

- Mark McKinley was promoted to a Career Level 6 position in the Supply Chain Delivery Department effective April 3, 2023. Immediately prior to Mr. McKinley's promotion, he worked in HDMA's Lincoln, Alabama facility. After Mr. McKinley's promotion and in all positions he has held since April 3, 2023, HDMA assigned Mr. McKinley to its Lincoln, Alabama facility. Mr. McKinley currently works at HDMA's Lincoln, Alabama facility.

(*Id.* at ¶ 6.)

- Erik Grieve was promoted to a Career Level 6 position in the Supply Chain Delivery Department effective April 1, 2024. Immediately prior to Mr. Grieve's promotion, he worked in HDMA's Lincoln, Alabama facility. After Mr. Grieve's promotion and in all positions he has held since April 1, 2024, HDMA assigned Mr. Grieve to its Lincoln, Alabama facility. Mr. Grieve currently works at HDMA's Lincoln, Alabama facility.

(*Id.* at ¶ 7.)[2]

---

[2] Oddly, given his HR role and his attestation to his ability to access employment records from various HDMA facilities, Mr. Harris asserts, only upon information and belief, that the fifth

Mr. Harris further attests that Plaintiff *would have continued to work* in HDMA's Lincoln, Alabama facility if he had received any of the above promotions to Career Level 6. (*Id*. at ¶ 8) (emphasis added).

As for the other two prongs, HDMA argues that venue in the Northern District of Alabama also is proper under the first prong of Title VII's venue statute because Plaintiff, as a long-term HDMA employee with a work location in Alabama, has felt the effects of every alleged discriminatory action in Alabama. Finally, HDMA contends that venue is proper under the second prong, again asserting that all of Plaintiff's physical personnel file and other employment documents are located in Lincoln and Birmingham, Alabama. (Harris Decl. II at ¶ 18.)

In a departure from his initial briefing, Plaintiff now specifically argues that venue is not proper in the Northern District of Alabama under any of the three prongs at issue here.[3]

---

promotion Plaintiff cites, that of Phil Eisner, went to Mr. Eisner when he worked for HDMA in Ohio, that HDMA assigned Mr. Eisner to its Marysville, Ohio facility and that he currently works at that facility. Given Mr. Harris's lack of personal knowledge about this particular promotion, the Court will not consider it. Nevertheless, if the Court were to consider it, it would not favor Plaintiff. Rather, it would lend further support to HDMA's contention that individuals receiving promotions remained employed at the same workstation at which they worked prior to their promotion. And, as the Court's discussion makes clear, Plaintiff has offered no evidence to refute that contention or any evidence that he would not have continued to work from the Alabama plant in the event of a promotion.

[3] In doing so, Plaintiff cites the standard for motions brought pursuant to Fed.R.Civ.P. 12(b)(3). That is not the governing standard here. "Where venue is proper but inconvenient, motions to transfer are made pursuant to 28 U.S.C. § 1404(a) rather than under Civil Rule 12(b)(3)." § 1352 Motions to Dismiss—Improper Venue, 5B Fed. Prac. & Proc. Civ. § 1352 (4th ed.); *see also Whitehouse v. Life Ins. Co. of N. Am.*, No. 3:15-CV-00639-TBR, 2015 WL 7587361, at *1 n.1 (W.D. Ky. Nov. 25, 2015). Consistent with this authority, HDMA has brought its Motion pursuant to 28 U.S.C. § 1404(a), arguing that, while venue is proper in Ohio, it is more convenient, applying that statute's governing standard to the circumstances of this case, in the Northern District of Alabama. (ECF No. 17.)

7

According to Plaintiff, all the relevant personnel decisions were made solely at HDMA's headquarters in this judicial district. Further, he argues that there is no proof that the Northern District of Alabama is the judicial district in which the employment records relevant to such practices are maintained and administered. With respect to this argument, Plaintiff asserts that the records at issue, as they pertain to his individual claims, include those of all individuals impacted by the alleged practices, not just the four white employees who may also have records at the Lincoln, Alabama plant. Finally, Plaintiff contends that, "'but for the alleged unlawful practice,'" his "principal duties and responsibilities (*i.e.,* 'his work') would have been in the corporate-level purchase and supply Department and he 'would have' reported to the centralized Department Lead for such job rather than any single satellite plant like the one in Alabama." (ECF No. 31 at 11-12.)

In support of his position, Plaintiff has submitted his own supplemental declaration. (ECF No. 31-1, Supplemental Declaration of Plaintiff Johnny M. Bush, Jr., "Supp. Bush Decl."). According to Plaintiff, the identified employees promoted to Career Level 6 positions reported to and worked for corporate-level departments and were supervised by the department leads at corporate headquarters, not anyone at the Lincoln, Alabama plant. (*Id.* at ¶ 21.) He explains that, after the merger in 2021, he and similar level employees were permitted to choose to continue performing their job duties from the Lincoln, Alabama plant but that that was not a requirement for accepting the job. (*Id.* at ¶ 22.) Further, he emphasizes that in his current role, he does not report to anyone in the Lincoln plant and his subordinate employees are not assigned to or required to report to the Lincoln plant. (*Id.* at ¶ 23.)

**IV.**

Consistent with the above authority, despite the putative class action nature of this case, the Court will examine only the information relating to Plaintiff's personal disparate treatment and disparate impact claims to determine whether venue is proper in the Northern District of Alabama. *Ring*, 2010 WL 3825390, at *4  Having reviewed the parties' supplemental filings, the Court concludes that HDMA has the better argument, at least as it relates to the third prong of Title VII's venue statute – the judicial district in which Plaintiff would have worked but for HDMA's alleged unlawful employment practices.  And, because "only one of Title VII's venue provisions must be satisfied for venue to be proper," *Nash,* 2015 WL 420222, at *2, the Court will not consider whether venue also would be proper in the Northern District of Alabama under either the first or second prongs of the statute.

Importantly, there is no dispute that Plaintiff resides in the Northern District of Alabama and his current workstation is the HDMA plant in Lincoln, Alabama.  Beyond this, Plaintiff does not dispute that the four identified individuals from the Lincoln plant continued to work at that plant after being promoted to the various Level 6 positions he also allegedly sought.  Notably, he also does not directly assert that he would not have continued to work at the Lincoln plant if he had received one of these promotions.  In lieu of a plainly stated challenge to these facts, Plaintiff relies on an explanation of job duties, corporate structure and the reporting hierarchy to distance himself from a defined physical location for either his current or potential workplace.  Plaintiff's effort in this regard is not persuasive.

Given Plaintiff's approach, the Court finds that the current record is sufficient to establish that the Northern District of Alabama also is a proper venue for the filing of Plaintiff's action.  Although not directly on point, analyses from other courts lend support for this conclusion and undermine Plaintiff's attempt to separate his primary or potential primary workplace from the

Northern District of Alabama. For example, in *Prosseda v. Windham Grp.,* No. 1:23-23069, 2025 WL 45692, at *4 (D.N.J. Jan. 8, 2025), the court concluded that travel to another state did not transform the out of state location into the plaintiff's primary workplace for purposes of determining venue. The *Prosseda* court noted that courts have consistently rejected arguments where a plaintiff's principal place of work was outside the proposed venue, and the plaintiff merely traveled to the venue state for work-related purposes. In doing so, it relied on *Binks v. U.S. Tech Solutions*, which explained that "the use of the article 'the' [in 'the judicial district'] rather than 'a' strongly suggests that the statutory requirement refers to the aggrieved individual's principal place of work, and not any district in which the individual's work might take that individual." No. 20-02969, 2020 WL 6701470, at *3 (D.N.J. Nov. 12, 2020) (quoting *James v. Booz-Allen*, 227 F. Supp. 2d 16, 23 (D.D.C. 2002)); *see also Rad v. Cognizant Tech. Sols. U.S. Corp.*, No. 20-03497, 2020 WL 6383245, *2 (D.N.J. Oct. 30, 2020) (finding that plaintiff's principal place of work was location of home office in Georgia despite "significant" travel to New Jersey)).

Here, Plaintiff asserts something even less than required travel outside the Lincoln, Alabama facility to perform his job duties. As noted, Plaintiff argues in terms of reporting channels and his duties and responsibilities beyond those strictly limited to the physical location of the Lincoln plant. The above reasoning, however, coupled with the information in his EEOC charge, confirms that the location of Plaintiff's principal, physical place of work is the Lincoln, Alabama plant. And, Plaintiff has introduced nothing into the record suggesting that, in the event of Plaintiff's receipt of the identified promotions, it would not have remained there. This is so even if, as he avers, his job duties, at least in some capacity, extended beyond that facility.

Moreover, in considering whether venue is appropriate in the Northern District of Alabama under Title VII, this conclusion represents "'a common sense appraisal of events having operative significance . . . .'" *Beall v. REICO Kitchen & Bath*, No. CV 23-2330, 2023 WL 7019180, at *2 (E.D. Pa. Oct. 24, 2023) (quoting *Jackson v. Ashcroft*, No. Civ.A. 02-8298, 2003 WL 22271478, at *2 (E.D. Pa. July 14, 2003) (internal quotations omitted)).  Finally, this conclusion is consistent with the idea that venue in Title VII actions should be limited to the "judicial districts concerned with the alleged discrimination." *Id.* (quoting *Thurmon v. Martin Marietta Data Sys.*, 596 F. Supp. 367, 368 (M.D. Pa. 1984) (internal citations omitted)). Certainly, the Northern District of Alabama, as Plaintiff's long-time place of employment and the location of an HDMA facility, can be considered a judicial district concerned with discrimination as alleged by Plaintiff.

## V.

Having concluded that the Northern District of Alabama is also a district in which this action could have been filed, the Court will consider whether the other determinative factors weigh in favor of the transfer pursuant to 28 U.S.C. § 1404(a).  As explained below, the Court concludes that they do.

On a motion to transfer under § 1404(a), the moving party bears the burden of proving why a court should transfer the action. *NOCO Co. v. ABC Deals, Inc.*, No. 1:22-CV-01172, 2024 WL 519886, at *2 (N.D. Ohio Feb. 8, 2024) (citing *LaCroix v. Am. Horse Show Ass'n*, 853 F. Supp. 992, 1000 (N.D. Ohio 1994));  *see also Drake v. FedEx Ground Package Sys., Inc.,* No. 221CV02636JTFATC, 2024 WL 1509677, at *2–3 (W.D. Tenn. Feb. 12, 2024), *report and recommendation adopted,* No. 2:21-CV-02636-JTF-ATC, 2024 WL 942378 (W.D. Tenn. Mar. 5, 2024), *appeal dismissed sub nom. Drake v. FedEx Corp.*, No. 24-5219, 2024 WL 2924953 (6th

11

Cir. Mar. 13, 2024), and *appeal dismissed sub nom. Drake v. FedEx Corp.*, No. 24-5217, 2024 WL 2891384 (6th Cir. Apr. 17, 2024) (citations and internal quotation omitted); *Michigan Custom Machines, Inc. v. AIT Worldwide Logistics, Inc.*, 531 F. Supp. 3d 1208, 1218 (E.D. Mich. 2021) (citation omitted). "This requires the movant to show that the forum to which transfer is sought is the *more convenient one vis a vis* the plaintiff's initial choice." *Drake,* 2024 WL 1509677, at *3 (citations omitted). And, generally, although a plaintiff's choice of forum is given deference, "when a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference." *Van Cleave v. Univ. of South,* 607 F. Supp. 3d 783, 789 (M.D. Tenn. 2022) (citations and internal quotations omitted).

In reviewing a motion to transfer, the court balances the private interests of the parties and public interest concerns. *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 672 F. Supp. 3d 538, 547 (S.D. Ohio 2023). Section 1404(a) is intended to place broad "discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Michigan Custom Machines, Inc. v. AIT Worldwide Logistics, Inc.*, 531 F. Supp. 3d 1208, 1218 (E.D. Mich. 2021) (internal quotation and citations omitted).

In exercising the requisite discretion, although not strictly required to, courts typically consider a variety of factors. *Michigan Custom Machines,* 531 F. Supp. 3d 1208, 1218. For example, with respect to the private interests of the parties, relevant factors often include: (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum. *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877 (M.D. Tenn. 2019) (citations omitted). As for public interests, those frequently include: (1)

docket congestion, (2) the burden of trial to a jurisdiction with no relation to the cause of action, (3) the value of holding trial in a community where the public affected live, and (4) the familiarity of the court with controlling law. *Nat'l Republican,* at 547. "The moving party bears the burden of demonstrating that, in light of these factors, fairness and practicality strongly favor transfer." *Michigan Custom Machines*, at 1218. (citation omitted).

Under the circumstances of this case, the majority of the private interest factors are largely neutral. For example, Plaintiff's choice of forum is not entitled to deference in this instance given that he does not reside in the Southern District of Ohio. Further, the residence of the parties is equally balanced as Plaintiff resides in Alabama and HDMA is incorporated in Ohio. Additionally, sources of proof, including various employment records, would be easily accessible by electronic means in either forum. There also is not much indication, on the current record at least, that either forum presents a more convenient location for potential witnesses. And, as for the convenience of the parties, Plaintiff cannot seriously claim that litigation of this action in his home forum would somehow be less convenient for him. Indeed, pursuing this case in the Northern District of Alabama would seem to be of far lesser burden to Plaintiff. Thus, the focus of the private interest factors really lands on the locus of events underlying the dispute. Here, this particular factor weighs very heavily in favor of transferring this case to the Northern District of Alabama.

As discussed, Plaintiff has worked at the Lincoln, Alabama facility since his hire by HMA in 2002. (Complaint, ECF No. 1 at ¶ 28.) Although Plaintiff alleges certain recent denied promotions as support for his claims that HDMA engages in various discriminatory practices which have resulted in this denial, he also alleges that the practices he is challenging pre-date the 2021 merger. (*See, e.g., Id*. at ¶¶ 59, 69.) In other words, Plaintiff alleges that these practices

existed while he was employed by HDMA's predecessor, HMA. (*Id.* at ¶ 9 "On April 21, 2021, Honda merged all of its automobile manufacturing facilities in the United States … into a single multi-state entity *formed* and known as … "HDMA.") (emphasis added). Indeed, Plaintiff asserts that he "has observed the race of employees performing and promoted to jobs at issue during his more than 20 years working for HDMA and its predecessor, HMA." (*Id.* at ¶ 45.)

That Plaintiff's allegation of discriminatory practices existing for ten years would include the time while he was employed by HMA is consistent with the information provided by Mr. Harris. (*See* Harris Decl. II at ¶¶ 5, 16 "Prior to the merger, HMA operated as a separate entity from other Honda affiliated businesses … with its own policies, procedures, organizational structure, job titles, terminology, and other operational elements.") And, while the record is not clear as to the location of many witnesses, at least as it relates to Plaintiff's individual claims, four comparators he names in his Complaint worked at and continue to work at the Lincoln, Alabama plant. (*Id.* at ¶¶ 4-7.) Moreover, Plaintiff's EEOC charge was filed with and investigated by the Birmingham District Office. (ECF No. 17-1.) Thus, the relevant events, as they relate to Plaintiff, occurred in the Northern District of Alabama.

With respect to the public interest factors, the majority are either neutral or not relevant. Indeed, the focus of these factors lands largely on the value of holding trial in a community where the public affected live. Here, this factor also weighs very strongly in favor of transferring this case to the Northern District of Alabama. In addition to the length of Plaintiff's residence and employment in Alabama, as HDMA notes, with an employee population of approximately 4500, there is reason to believe it would be considered a significant business within that District. (ECF No. 28 at 11 citing ECF No. 25-3.) Thus, it follows that there is value in having this case litigated in the Northern District of Alabama.

In sum, taking all of the above into account, the Court concludes, in an exercise of its discretion, that the interests of justice support the transfer of this case to the Northern District of Alabama.

## VI.

For the reasons stated above, Defendant's Motion to Transfer Venue (ECF No. 17) is **GRANTED.**  This case is **TRANSFERRED** to the United States District Court for the Northern District of Alabama, Eastern Division.

**IT IS SO ORDERED.**

**DATED: JUNE 9, 2025**        /s/ *Elizabeth A. Preston Deavers*
                **ELIZABETH A. PRESTON DEAVERS**
                **UNITED STATES MAGISTRATE JUDGE**